M. D. SCULLY (SBN: 135853)
mscully@grsm.com
SUSAN B. MEYER (SBN: 204931)
smeyer@grsm.com
PATRICK J. MULKERN (SBN: 307272)
pmulkern@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101
Phone: (619) 230-7441
Fax: (619) 696-7124

Attorneys for Plaintiff
VITAL PHARMACEUTICALS, INC., d/b/a VPX SPORTS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VITAL PHARMACEUTICALS, INC. d/b/a VPX Sports, a Florida corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MONSTER ENERGY COMPANY, a Delaware corporation, and REIGN BEVERAGE COMPANY, LLC, a Delaware limited liability company,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>**(1) FEDERAL TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION;**<br>**(2) CALIFORNIA STATUTORY UNFAIR COMPETITION; AND**<br>**(3) CALIFORNIA COMMON LAW UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

-1-
COMPLAINT

Plaintiff Vital Pharmaceuticals, Inc. d/b/a VPX Sports ("VPX") brings this action against Defendants Monster Energy Company ("Monster") and Reign Beverage Company, LLC ("Reign Beverage") and alleges as follows:

## INTRODUCTION

1. This action follows on the heels of Monster's intentional trade dress infringement of VPX's well-known BANG energy drinks by Monster's nascent REIGN line of products—with Monster having now expanded its rip-off product line to include a thermogenic-focused sub-brand, called "REIGN INFERNO." As is apparent from the following comparisons, Monster's REIGN INFERNO sub-brand continues the Monster family tradition of shamelessly copying VPX and its flagship product's (*i.e.* BANG's) trade dress.

## THE PARTIES

2. Plaintiff VPX is a Florida corporation, with its principal place of business in Weston, Florida.

3. Upon information and belief, Defendant Monster is a Delaware corporation, with its principal place of business in Corona, California.

4. Upon information and belief, Defendant Reign Beverage is a Delaware limited liability company, with its principal place of business in Los Angeles, California.

5. Upon information and belief, Defendant Reign Beverage is a wholly owned subsidiary of Defendant Monster.

## JURISDICTION AND VENUE

6. This is an action for actual damages, disgorgement of profits, punitive damages, and injunctive relief—under both Federal and California law—based upon Monster and Reign Beverage's willful acts of trade dress infringement and unfair competition.

7. This Court has original subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 (federal question), 1332(a) (diversity), and 1338(a)

-2-
COMPLAINT

1 (trademarks and unfair competition).  This Court also has supplemental jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because the state law claims are so related to the federal law claims that they form the same case or controversy and derive from a common nucleus of operative facts.

8.   This Court has personal jurisdiction over Monster and Reign Beverage because, on information and belief, each has its principal place of business within this Judicial District.

9.   Venue is proper in the Central District of California—pursuant to 28 U.S.C. § 1391(b)—at least because (i) Monster and Reign Beverage reside in this Judicial District, and (ii) a substantial part of the events giving rise to this complaint occurred in this Judicial District.

## FACTUAL BACKGROUND

### A.   Plaintiff and Its BANG Trade Dress

10.   Plaintiff VPX was founded in 1993, later incorporated in May 1996, and has since become a leading manufacturer, distributor, and seller of fitness-focused energy drinks and nutritional supplements.

11.   Since its inception, VPX has invested a significant amount of time, effort, and financial resources promoting, marketing, and advertising its various product lines.  VPX's products are now among the best-selling energy drinks and sports nutrition products in the industry.

12.   For example, in approximately September 2008, VPX launched its BANG product line.[1]  BANG energy drinks are sugar-free, zero-calorie, carbonated energy drinks that contain, among other ingredients, Super Creatine, branched-chained amino acids, and Coenzyme Q10.  BANG energy drinks are sold in 16-

---

[1] Non-party JHO Intellectual Property Holdings, LLC ("JHO") owns various trademarks and other intellectual property rights associated with VPX's various product lines—including its BANG products.  VPX is the exclusive licensee of all the BANG-related intellectual property, including the BANG Trade Dress asserted herein, including the right to sue third parties for infringement without the need to add or otherwise join JHO as a party.

-3-
COMPLAINT

1 ounce aluminum cans, but differ from most energy drinks on the market in that they contain no sugar and no calories (as noted above) and also have no carbohydrates or artificial colors.

13. BANG energy drinks are high-quality, great-tasting beverages designed for and targeted to healthy, adult consumers—including fitness-focused consumers interested in pre-workout-specific energy.

14. Since at least as early as October 2015, VPX's BANG energy drinks have also enjoyed a unique appearance—recognizable as the style, work, and trade dress of VPX—that is visually appealing and distinctive from all other energy drinks and beverages on the shelves of retailers. Specifically, the BANG Trade Dress consists of the overall look-and-feel resulting from the distinctive combination of the following non-functional features on a 16-oz aluminum can: (i) a black background with contrasting, bold (*i.e.* brightly-colored) design for the rest of the can; (ii) a large logo in the same bold (*i.e.* bright) color as the rest of the can covering the middle/top portion of the can; (iii) the product name in the same bold (*i.e.* bright) color as the rest of the can covering the middle/bottom portion of the can; (iv) a flavor designation in ALL CAPS in the same bold (*i.e.* bright) color as the rest of the can appearing along the bottom portion of the can; and (v) a solid-colored banner covering the top portion of the can in the same bold (*i.e.* bright) color as the rest of the can.

15. A visual example of the BANG Trade Dress is depicted below:



16. BANG energy drinks are sold in over 20 different flavors, each with a different—but internally consistent—bold (*i.e.* bright) contrasting color scheme. The Cotton Candy shown above, for example, is light-pink; Peach Mango, however, is scarlet-red/neon-green, Purple Guava Pear is yellow/purple, and Sour Heads is neon-green.

17. The BANG Trade Dress is inherently distinctive.

18. The BANG Trade Dress is non-functional.

19. VPX has spent significant amounts of time and energy/effort promoting its BANG energy drinks, including featuring the BANG Trade Dress. Indeed, VPX has spent millions of dollars marketing, advertising, and promoting its BANG energy drinks, including featuring the BANG Trade Dress.

20. For example, VPX markets, advertises, and promotes its BANG energy drinks, including featuring the BANG Trade Dress, extensively on the internet—including on its website (www.bang-energy.com), its retailers' websites, and on social media platforms like Instagram (@bangenergy), Twitter (@BANGenergy), and Facebook (@BANGenergy).

21. Additionally, VPX also markets, advertises, and promotes its BANG energy drinks, including featuring the BANG Trade Dress, on apparel and other "swag," as well on a fleet of specially-designed (*i.e.* custom) vehicles like the one shown below.



-5-
COMPLAINT

22. As part of its social media-focused efforts, VPX also utilizes social media "influencers" and "ambassadors" to promote its BANG energy drinks, including featuring the BANG Trade Dress, on numerous social media platforms (including Instagram, Twitter, and Facebook). Through these influencers and ambassadors, VPX's social media presence is estimated to reach over 235 million people. As a result, third-party followers (and others, including celebrities and public figures) refer to BANG energy drinks, and the BANG Trade Dress, extensively on social media and in traditional, general media.

23. VPX's BANG energy drink-related, and BANG Trade Dress-related, marketing efforts also extend to marquee sporting events (like the Super Bowl), music festivals (like Life in Color and Ultra), sports nutrition trade shows (like Arnold Fitness Expo, Olympia Fitness & Performance Expo, and Europa Games Get Fit & Sports Expo), and beverage trade shows (like NACS and Expo West). At these events, VPX often has a large booth and stage where it hosts "parties" and performances, conducts product giveaways, and includes dancing models who are dressed in clothing featuring the distinctive BANG energy drink, including featuring the BANG Trade Dress.



24. Given the success of VPX's marketing efforts, and the high quality of its products, VPX and its distinctive trade dress have become widely known, uniquely associated with VPX, and represent substantial value and goodwill to VPX.

25. Indeed, since at least as early as October 2012, VPX's BANG products have been distributed and sold nationwide to a wide range of customers—including bottlers, full-service beverage distributors, retail grocery and specialty chains,

wholesalers, club stores, mass merchandisers, convenience stores, and food-service customers. Some of VPX's partners include Publix, Albertsons, Kroger, Wal-Mart, Walgreens, 7-Eleven, and the U.S. Military. VPX's BANG products are also sold in gyms and leading sports-related supplement/vitamin retailers like GNC and The Vitamin Shoppe, as well as various online retailers like Amazon.com, Bodybuilding.com, and TigerFitness.com.

26. Since VPX launched its BANG energy drinks, the BANG product line has enjoyed tremendous sales growth year-over-year.

27. According to recent sales data from a third-party market research company, BANG energy drinks are now the nation's BEST-SELLING sugar-free energy drink—and THIRD (3rd) best-selling energy drink overall—with a market share of approximately 9.3% in recent data.

28. BANG energy drinks have also received extensive, unsolicited third-party commentary, including in articles written about VPX's (and BANG's) unprecedented success as well as YouTube videos.

29. As a result of VPX's marketing, advertising, promotional efforts, sales, and third-party recognition, BANG energy drinks—including the BANG Trade Dress—have developed significant amount of goodwill and secondary meaning, and the consuming public has come to associate the BANG Trade Dress solely with VPX.

30. Yet, unfortunately, others in the industry—including Defendants Monster and Reign Beverage—have taken to copying VPX's BANG Trade Dress (rather than rely on their own products or trade dress) in an underhanded effort to compete and cause consumer confusion with VPX's undeniably rapidly-growing brand of BANG energy drinks.

///

///

///

## B. Defendants and Their Infringing Trade Dress

31. On information and belief, Defendant Monster is a subsidiary of Monster Beverage Corporation, a publicly traded company that most often refers to itself and its subsidiaries as a collective entity. On information and belief, Monster launched its flagship "Monster Energy" energy drink back in 2002.

32. On information and belief, Defendant Reign Beverage was formed in October 2018, and lists Monster as its sole member. For all practical purposes, Reign Beverage is fully-supported and controlled by Monster. For example, Reign Beverage's application to register as a foreign LLC in California is signed by Monster's Chairman and CEO (Mr. Rodney Sacks). Monster's Chairman and CEO has also announced Monster's "full support" of Reign Beverage in all relevant commercial phases—including brand development, marketing, sales, and distribution.

33. For the purposes of the remainder of this complaint, Defendant Monster and Defendant Reign Beverage will be referred to collectively as "Monster."

34. On information and belief, Monster has developed several different extensions, flavors, and sub-brands all under the family of "Monster" brands. For example, Monster Energy includes a Lo-Carb, Assault, and Absolutely Zero versions. There is a tea-based version available as Monster Rehab, a "less sweet, lighter-tasting, zero-calorie" version available as Monster Energy Zero, as well as a juice-based version available as Juice Monster.

35. All of these Monster energy drink brands, including its flagship product and sugar-free or specialty versions, all feature the product name "Monster" and the "M" claw logo. A sampling of Monster's family of energy drinks, all with the same general appearance, is shown below.

///

///

///



36. Although touting itself as a nationwide leader in the business of energy drinks, Monster has been losing market share to VPX since VPX launched its BANG energy drink product. Unsurprisingly, then, Monster specifically identified BANG as its only "competitor" or "main competitor" in various industry publications. *See, e.g.*, Exhibit A (1/18/19 FOOD BUSINESS NEWS article);[2] Exhibit B (1/18/19 BEVNET article).[3]

37. Indeed, once VPX's BANG energy drinks started experiencing extensive attention and enjoying record-breaking sales, Monster began promoting a new product called REIGN energy drink ("Original REIGN Product"). While Monster's flagship "Monster Energy" product contains over 52 grams of sugar, the Original REIGN Product was explicitly released to serve as a BANG-alternative, with similarly no sugar, no carbs, and no calories. In fact, many industry publications described Monster's launch of REIGN as intended to specifically target BANG and compete directly with VPX in the fitness-oriented energy drink space. *See, e.g.*, Exhibit B (1/18/19 BEVNET article); Exhibit C (3/21/19 BEVNET article).[4]

---

[2] *Available at*: www.foodbusinessnews.net/articles/13174-its-time-for-reign-at-monster.
[3] *Available at*: www.bevnet.com/news/2019/monster-reveals-performance-energy-tea-innovations.
[4] *Available at*: https://www.bevnet.com/news/2019/wells-fargo-competition-volume-drops-hurting-monster.

38. The Original REIGN Product was first launched in March 2019, and on information and belief, achieved nationwide distribution in April 2019.

39. Despite previously having consistent appearance among all of its sub-brands (*i.e.* universal use of the "M" claw and "Monster" nomenclature), *see supra*, Monster's Original REIGN Product looked nothing like Monster's previous portfolio of energy drinks. Instead, and most problematically, the Original REIGN Product was nearly identical—and certainly confusingly similar—to VPX's BANG energy drink and the BANG Trade Dress. An image showing Monster's Original REIGN Product line, as compared against the BANG Trade Dress, is reproduced below.[5]



40. Following the apparent commercial success of its first VPX knock-offs (*i.e.* the Original REIGN Product), Monster decided to expand its trade dress infringement even further. Specifically, it developed and launched an allegedly "thermogenic" version of REIGN—entitled "REIGN INFERNO." On information

---

[5] VPX sued Monster for trade dress infringement based on the Original REIGN Product in the Southern District of Florida. *See* Case No. 19-cv-60809 (S.D. Fla.). That matter is presently set for trial on August 3, 2020. *See id.* at ECF No. 296.

and belief, the INFERNO line was first launched to the public in January 2020 and is currently available for purchase throughout the United States—including the State of California and the Central District of California. An image showing Monster's REIGN INFERNO product line is reproduced below:



41. As shown above, the INFERNO line (*i.e.* the Infringing INFERNO Products) contain the same distinctive, non-functional protectable elements of the BANG Trade Dress. Specifically, the Infringing INFERNO Products improperly infringe on the BANG Trade Dress because they utilize the following features on a 16-oz aluminum can: (i) a black background with contrasting, bold (*i.e.* brightly-colored) design for the rest of the can; (ii) a large logo in the same bold (*i.e.* bright) color as the rest of the can covering the middle/top portion of the can; (iii) the product name in the same bold (*i.e.* bright) color as the rest of the can covering the middle/bottom portion of the can; (iv) a flavor designation in ALL CAPS in the same bold (*i.e.* bright) color as the rest of the can appearing along the bottom portion of the can; and (v) a solid-colored banner covering the top portion of the can in the same bold (*i.e.* bright) color as the rest of the can.

42. Monster markets the Infringing INFERNO Products, together with the similarly confusing Original REIGN Products, in such a manner that the overall commercial impression of Original REIGN and Infringing INFERNO is one that is

1 likely to cause consumer confusion. Specifically, the Infringing INFERNO Products
2 are placed by Monster, or at Monster's direction, in store coolers with the Original
3 REIGN Products in a manner that presents a unified commercial display and
4 impression. That impression, though, is so highly similar to the Bang Trade Dress
5 as to be likely to cause confusion.



43. On information and belief, the Infringing INFERNO Products will be (are already currently are) distributed throughout the United States utilizing Monster's existing, extensive distribution network. This distribution includes many of the same retailers where BANG energy drinks are currently (or will soon be) sold—including retail grocery and specialty chains, wholesalers, club stores, mass merchandisers, convenience stores, food-service customers, drug stores, the U.S. Military, health stores, and vitamin stores.

44. Absent injunctive relief, VPX will suffer irreparable harm in the loss of control of its reputation and goodwill associated with its BANG Trade Dress. Indeed, this and all other damage suffered by VPX (including to its reputation and

Gordon Rees Scully Mansukhani, LLP
101 W Broadway, Suite 2000
San Diego, CA 92101

goodwill) resulting from the conduct alleged herein cannot be easily quantified, nor could it be redressed through monetary damages alone.

## FIRST CAUSE OF ACTION

### Federal Trade Dress Infringement and Unfair Competition

### (15 U.S.C. § 1125(a))

45. VPX incorporates the allegations of all the preceding paragraphs as if fully set forth herein.

46. The BANG Trade Dress is inherently distinctive or has acquired secondary meaning. The BANG Trade Dress is non-functional.

47. Monster has infringed VPX's rights in the BANG Trade Dress by using a confusingly similar design in the Infringing INFERNO Products in commerce without VPX's permission.

48. Monster's unauthorized use of the design elements confusingly similar to the BANG Trade Dress in connection with the Infringing INFERNO Products constitutes a false designation of origin, a false or misleading description of fact, and false or misleading representation of fact, and has caused and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Monster's products with VPX and the origin, sponsorship, or approval of Monster's products by VPX.

49. Monster's acts, including its manufacture and sale of the Infringing INFERNO Products, constitute trade dress infringement or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

50. Monster's acts constitute willful and intentional infringements of the BANG Trade Dress, and Monster did so with the intent to trade upon VPX's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believe that Monster's products are associated with, sponsored by, approved by, or originating from VPX when they are not.
///

51. Monster had actual knowledge of VPX's ownership and prior use of the BANG Trade Dress and, without the consent of VPX, willfully violated 15 U.S.C. § 1125(a)(1)(A).

52. Monster has acted in bad faith or willfully in using design elements confusingly similar to the BANG Trade Dress in connection with the Infringing INFERNO Products.

53. Monster's infringing acts have caused, and unless restrained by this Court will continue to cause, VPX irreparable injury to its reputation and goodwill. Monster's infringing acts have caused, and unless restrained by this Court will continue to cause, VPX actual monetary damages—including, but not limited to, lost profits.

54. VPX does not have an adequate remedy at law to recover for its harm and is therefore entitled to injunctive relief.

## SECOND CAUSE OF ACTION

### California Statutory Unfair Competition

### (Cal. Bus. & Prof. Code § 17200)

55. VPX incorporates the allegations of all the preceding paragraphs as if fully set forth herein.

56. By virtue of the actions complained of herein, Monster has intentionally caused a likelihood of confusion among consumers and the public, and has unfairly competed in violation of California Bus. & Prof. Code §§ 17200 *et seq.*

57. Monster's actions complained of herein constitute trade dress infringement, unfair competition, and/or unlawful, unfair, malicious, or fraudulent business practices, which have injured VPX.

58. Monster has acted in bad faith or willfully in using design elements confusingly similar to the BANG Trade Dress in connection with its products, including the Infringing INFERNO Products.

///

59. Monster's unfair and unlawful business practices, in violation of California Bus. & Prof. Code §§ 17200 *et seq.*, have caused substantial injury to VPX and are continue to cause substantial injury. VPX has no adequate remedy at law for these injuries.

60. Unless Monster is restrained by this Court from continuing its unfair and unlawful business practices, in violation of California Bus. & Prof. Code §§ 17200 *et seq.*, these injuries will continue to accrue.

61. Accordingly, and pursuant to California Bus. & Prof. Code § 17204, VPX is entitled to preliminary and permanent injunctive relief against Monster's unfair and unlawful business practices constituting statutory unfair competition.

## THIRD CAUSE OF ACTION

### California Common Law Unfair Competition

62. VPX incorporates the allegations of all the preceding paragraphs as if fully set forth herein.

63. Monster's actions complained of herein constitute trade dress infringement and unfair competition in violation of the common law of the State of California.

64. Monster's actions complained of herein have been committed, and are being committed, with the deliberate purpose and intent of appropriating and trading on VPX's goodwill and reputation, and thereby unfairly competing with VPX in violation of the common law of the State of California.

65. Monster's actions described herein were taken with substantial certainty that such acts would cause harm to VPX and in conscious disregard for VPX's rights. Monster's conduct described herein was done with malice, ill-will, and intent to harm VPX—such as to constitute oppression, fraud, malice, and despicable conduct under California Civ. Code § 3294—and thereby entitle VPX to exemplary damages in an amount appropriate to punish and set an example of Monster.

66. Monster has acted in bad faith or willfully in using design elements confusingly similar to the BANG Trade Dress in connection with its products, including the Infringing INFERNO Products.

67. Monster's actions have caused VPX irreparable harm, and unless enjoined, Monster's acts as alleged herein will continue to cause VPX irreparable harm, loss, and injury.

## PRAYER FOR RELIEF

WHEREFORE, VPX prays for a judgment in its favor, and against Defendants Monster and Reign Beverage, with the following relief:

1. That the Court render final judgment in favor of VPX and against monster on all claims of relief alleged herein;

2. That the Court render final judgment that Monster has violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing VPX's rights in the BANG Trade Dress;

3. That the Court render final judgment that Monster has violated the provisions of 15 U.S.C. § 1125(a) by unfairly competing against VPX by using false, deceptive, or misleading statements of fact that misrepresent the nature, quality, and characteristics of the Infringing INFERNO Products;

4. That the Court render a final judgment that Monster has violated California Bus. & Prof. Code §§ 17200 *et seq*. by committing trade dress infringement and unfairly competing with VPX;

5. That the Court render a final judgement that Monster has violated California common law by unfairly competing with VPX;

6. That VPX be awarded actual damages it has sustained as a consequence of Monster's conduct pursuant to 15 U.S.C. § 1117;

7. That VPX be awarded Monster's profits obtained by Monster as a result of Monster's conduct complained of herein pursuant to 15 U.S.C. § 1117;

///

8. That any such damages and profits be trebled and awarded to VPX as a result of Monster's willful, intentional, and deliberate acts in violation of the Lanham Act, pursuant to 15 U.S.C. § 1117;

9. That Monster—its agents, servants, employees, successors, assigns, related companies, and all persons in concert with it—be preliminarily and permanently enjoined and restrained from: (i) using any mark or trade dress that is confusingly similar to the BANG Trade Dress; (ii) unfairly competing with VPX in any manner; and (iii) causing a likelihood of confusion or injury to VPX's business reputation.

10. That Monster be directed to file with this Court—and serve on VPX—within thirty (30) days after the service of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the injunction pursuant to 15 U.S.C. § 1116;

11. That this case be deemed "exceptional" and VPX be awarded its reasonable costs, expenses, and attorney's fees, pursuant to 15 U.S.C. § 1117;

12. That VPX be awarded exemplary damages from Monster pursuant to California Civ. Code § 3294;

13. That Monster's actions be deemed willful;

14. That Monster be required to deliver and destroy all goods, advertising, and other unauthorized materials bearing trade dress that is confusingly similar to the BANG Trade Dress, pursuant to 15 U.S.C. § 1118;

15. That VPX be awarded restitution and disgorgement; and

16. That VPX be awarded any such other relief that the circumstances may require and that the Court deems just and proper.

///
///
///
///

# **DEMAND FOR JURY TRIAL**

Plaintiff VPX hereby demands a jury trial, pursuant to Fed. R. Civ. P. 38, on all claims that are so triable.

Dated: June 1, 2020    GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Susan B. Meyer*
M.D. Scully
Susan B. Meyer
Patrick J. Mulkern
Attorneys for Plaintiff
VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports